IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARISMA JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-50-SLP |
| ) | |
| AMERICAN COLLECTION ) | |
| SERVICES, INC.; WORKS & LENTZ, INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT WORKS & LENTZ, INC.'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT**

In accordance with FED. R. CIV. P. 12(b)(6), Defendant, Works & Lentz, Inc. ("W&L"), respectfully moves to dismiss the claims set forth against it in the Amended Complaint and Demand for Jury Trial ("Amended Complaint") (Doc. No. 9) filed by Charisma Jones ("Plaintiff"), with prejudice.

**INTRODUCTION**

Plaintiff alleges that, on or about June 30, 2023, Charisma Jones mailed W&L a certified letter, informing W&L that "the only way to conveniently contact [her] was via email" and providing Ms. Jones' email address. (Doc. No. 9, ¶¶ 20-21). Ms. Jones further alleges that W&L received Jones' letter on or about July 3, 2023. (Doc. No. 9, ¶ 22). Plaintiff then alleges that on or about July 14, 2023, W&L mailed correspondence "to Ms. Jones' house seeking to collect the alleged debt." (Doc. No. 9, ¶ 23).

Plaintiff alleges that W&L violated 15 U.S.C. §1692(c)(a)(1) of the Fair Debt Collection Practices Act ("FDCPA") by communicating with Ms. Jones at a place W&L

knew "was not convenient." (Doc. No. 9, ¶ 38). Plaintiff also alleges violation of §1692d of the FDCPA, for conduct, "the natural consequence of which is to harass, oppress, and/or abuse Ms. Jones." (Doc. No. 9, ¶ 42). This is clearly the sending of the same letter, because no other communication by W&L is alleged to have occurred (or did occur).

Despite Plaintiff amending as of right[1] and removing typographical errors and obvious references to another case, Plaintiff's claims—at their core—remain the product of an attempt by Plaintiff and her counsel to manufacture a lawsuit under the FDCPA. But that attempt to create claims against W&L is unsuccessful: Plaintiff's allegations, as a matter of law, do not entitle her to relief under the statutory text of the FDCPA.

## ARGUMENT AND AUTHORITIES

**I.   GOVERNING STANDARDS**

"Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d

---

[1] Fed. R. Civ. P. 15(a)(1)(B) provides that "[a] party may amend [her] pleading once as a matter of course no later than . . . . 21 days after service of a motion under Rule 12(b) . . . ." W&L objects to any further amendments and the core issues presented by this Motion should be decided by the Court.

1098, 1107 (10th Cir. 2016). "Accordingly, in examining a complaint under Rule 12(b)(6), [the Court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Ultimately, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and commons sense." *Twombly*, 550 U.S. at 556.

## II. PLAINTIFF FAILS TO ALLEGE THAT W&L COMMUNICATED WITH HER AT AN UNUSUAL OR INCONVENIENT TIME OR PLACE.

Plaintiff principally contends that W&L violated 15 U.S.C. § 1692c, which prohibits any debt collector from communicating with a consumer, "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." Plaintiff claims that correspondence by mail (presumably to Plaintiff's home address) was at a "place" that W&L knew was "inconvenient." Plaintiff's reading of § 1692c, by which Plaintiff may simply declare a letter to her home to be "inconvenient," ignores the plain meaning of the statute's text, is contrary to the actual purposes of the FDCPA, and, moreover, to permit Plaintiff's idiosyncratic interpretation of the statute would only encourage further manufactured FDCPA litigation.

It is axiomatic that a statute must be read in accordance with its plain meaning: "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S.

249, 253-54 (1992). The term "inconvenient" has a plain meaning independent of how Plaintiff would have this Court interpret this term.

Webster's English Dictionary defines "Inconvenient" as meaning "not convenient, especially in giving trouble or annoyance." *Inconvenient*, WEBSTER'S ENGLISH DICTIONARY. This Court should use its "common sense" in deciding whether a claim has been plausibly stated. *Twombly*, 550 U.S. at 556. Common sense dictates that correspondence sent by mail to Plaintiff at her home is not a communication at an "inconvenient" place, no matter what Plaintiff had conveyed to W&L prior to the correspondence.[2]

Of course, what place or time of communication is "inconvenient" will depend, to some extent, upon an individual consumer's personal circumstance: a phone call during the day while one consumer is at work may be particularly inconvenient to them, but the same call may present no inconvenience to another consumer. But be that as it may, Plaintiff has not plausibly alleged sufficient facts demonstrating that regular mail sent to Plaintiff's home was a communication at an "inconvenient" place, i.e., that such a communication would cause her trouble or annoyance. As the United States District Court for the Southern District of Texas has observed: "Regular United States Mail to a last known residential address is not on its face 'unusual' or 'inconvenient.'" *Lindley v. TRS Recover Assocs.*, 2012 U.S. Dist. LEXIS 175935, * 11 (S.D. Tex. Dec. 12, 2012); *see also Grooms v. Sklar*

---

[2] Subsection 15 U.S.C. § 1692c(a)(3) confirms this, specifically delineating that a consumer's place of employment is *per se* inconvenient "if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication."

*Law, LLC*, 2023 U.S. Dist. LEXIS 81549, *6 (E.D. Pa. May 10, 2023) ("Sending things in the mail, for a recipient to open at her leisure, is not inconvenient."). Plaintiff cannot, by fiat, label her home an "inconvenient" place for communication—especially when so declaring in a dispute notice.

Further, there are situations in which a debt collector, such as W&L is legally obligated to communicate with a consumer through U.S. Mail or some means other than email. **This is such an instance.** The relevant letters are attached hereto as Exhibits 1 and 2.[3] We now know this to be the case for at least two reasons: *First*, Plaintiff amended her complaint and did not dispute that these letters were the relevant communications. *Second*, and even more particularly, Plaintiff, in fact, amended what was previously Paragraph 22 of the Complaint (and is now Paragraph 23 of the Amended Complaint) to change the date of responsive correspondence from W&L from July 26, 2023[4] to July 14, 2023 (the exact date of Exhibit 2, which is the only correspondence from W&L after the June 30, 2023 letter from Ms. Jones (Exhibit 1).

15 U.S.C. § 1692g(b) governs this situation as, by Exhibit 1, "the consumer [Ms. Jones] notifie[d] the debt collector [W&L] in writing within the thirty-day period described

---

[3] "[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim . . . ." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). These letters are both referred to in the complaint and are central to the plaintiff's claim. Indeed, they are the sole basis for it.

[4] It would appear that this is the date of correspondence from the other defendant, American Collection Services, Inc., which is a totally separate and unrelated entity from W&L.

5

in subsection (a) that the debt, or any portion thereof, is disputed." Thus, W&L was mandatorily bound by the following language: "the debt collector **shall** cease collection of the debt, or any disputed portion thereof, until the debt collector obtains . . . the name and address of the original creditor, and a copy of such . . . name and address of the original creditor, *is mailed* to the consumer by the debt collector." 15 U.S.C. § 1692g(b) (emphasis added). "One section of a statute should not be read so as to '. . . bring it into unreconcilable conflict with other provisions of the Act.'" *United States v. Lancer*, 508 F.2d 719, 731 n.37 (3d Cir. 1975) (quoting *Roberts v. United States*, 320 U.S. 264, 267 (1943)); *Hale v. Johnson*, 845 F.3d 224, 227-28 (6th Cir. 2016) ("[W]hen 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions,' [courts] must take care not to read one part of the scheme 'to provide a different, and conflicting, solution to a problem that has already been specifically addressed elsewhere' in the scheme." (quoting *Negusie v. Holder*, 555 U.S. 511, 545 (2009) (Thomas, J., dissenting)). But Plaintiff's proposed interpretation of 15 U.S.C. § 1692c(a)(1) would do just that, by declaring conduct required by 15 U.S.C. § 1692g(b) to be done a specific way (i.e., "mailing") to be in violation of 15 U.S.C. § 1692c(a)(1). Whatever else can be said of this assertion, it cannot be squared with the statutory text and the established rules of statutory construction. Moreover, it is well within the settled rule that "'bizarre or idiosyncratic' theories . . . simply cannot serve as the basis for an FDCPA claim." *Riccio v. Client Servs.*, Civil Action No. 20-7974 (FLW) (DEA), 2020 U.S. Dist. LEXIS 231127, at *10 (D.N.J. Dec. 9, 2020).

Indeed, the canons of statutory construction—to the extent that the Court finds the need to reach them—also support W&L's interpretation of 15 U.S.C. § 1692c(a)(1) and defeat the Plaintiff's. Under the harmonious-reading canon, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." BRYAN A. GARNER & ANTONIN SCALIA, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 180 (2012); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 521 (2018) (Gorsuch, J.) ("The canon against reading conflicts into statutes is a traditional tool of statutory construction . . . ."). Such a conflict would arise with the Plaintiff's position—i.e., 15 U.S.C. § 1692g(b) would require W&L to cease activity until the information in its July 14 letter "***is mailed*** to [Ms. Jones] by [W&L]" and 15 U.S.C. § 1692c(a)(1) would prevent compliance.

Moreover, the Plaintiff's proposed interpretation of 15 U.S.C. § 1692c(a)(1) would also violate "the ancient interpretive principle that the specific governs the general (*generalia specialibus non derogant*)," *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012); *see also* SCALIA & GARNER, *supra*, at 183-88. This is so as 15 U.S.C. § 1692g(b) specifically governs the manner of responding to a dispute in writing (by "mailing") as to opposed to 15 U.S.C. § 1692c(a)(1)'s more general prohibition on "inconvenient" communications. Indeed, subsection (a) is entitled "Communication with the consumer **generally**" (emphasis added).[5]

---

[5] In addition, "[i]f a text truly contains irreconcilable provisions at the same level of generality, and they have been simultaneously adopted, neither provision should be given effect." SCALIA & GARNER, *supra*, at 189. If the Court rejected W&L's other positions set forth above (which it should not do), this canon would govern as applied to this case, and Plaintiff's claim would still fail.

The Plaintiff's interpretation, as applied to this case, would also run afoul of the absurdity doctrine. *See Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006). This is so as Plaintiff's unilateral declaration would prevent the ability to pursue litigation against her. If e-mail were the only possible means of communicating with her, a lawsuit could not be served on her, as neither Oklahoma law nor the Federal Rules of Civil Procedure permit service by e-mail, while both permit service of process to be made on any individual residing at the consumer's residence that is over fourteen (14) years of age. *See* 12 *Okla. Stat.* § 2004(C)(1)(c)(1); FED. R. CIV. P. 4(e)(1) & FED. R. CIV. P. 4(e)(2)(B). But by Plaintiff's interpretation 15 U.S.C. § 1692c(a)(1) would allow her to prevent that in perpetuity.[6] This is not, and cannot be, the law.

All of that notwithstanding, however, to permit Plaintiff to label communication by U.S. Mail to her home as communication at an "inconvenient" place is contrary to the purposes of the FDCPA. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Sending correspondence to Plaintiff at her home—especially correspondence that is statutorily required to be mailed there when it is the last known address—is not an "abusive

---

[6] Plaintiff's professed concerns and harms would be equally applicable—others that she resided would, in this event, be made aware of the Plaintiff's "private information and [would] discover[] . . . the alleged debt within her household." (*See* Doc. 9, at ¶ 25). Of course, these alleged concerns are attendant to all debt collection activity, and the FDCPA is not intended to prevent all such activity and should not be interpreted to do so.

debt collection practice," and to permit recovery on this ground would not further any purpose of the FDCPA and would, contrary to the purposes of the statute, disadvantage W&L (very possibly preventing collection entirely) despite its having refrained from use of abusive practices.

### III. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE THAT W&L VIOLATED 15 U.S.C. § 1692D.

Plaintiff also asserts that W&L's same conduct, i.e., sending correspondence to her, violated 15 U.S.C. §1692d. Objectively, as a matter of law, no reasonable person could find that the mere act of sending a letter—not to mention one that is statutorily required be sent and in response to a request that Ms. Jones made—is likely to "harass, oppress, or abuse" any person, and Plaintiff's claim must fail.

Section 1692d of the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and the statute then lists specific instances of conduct proscribed:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) [604(a)(3)] of this Act [15 USCS § 1681a(f) or 1681b(a)(3)].
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 804 [15 USCS § 1692b], the placement of telephone calls without meaningful disclosure of the caller's identity.

15 USC § 1692d.

A claim under 15 U.S.C. § 1692d that does not plausibly allege conduct that is harassing, offensive, or abusive, should be dismissed. *Scribner v. Works & Lentz, Inc.*, 2015 U.S. Dist. LEXIS 35702, *14 (N.D. Okla. Mar. 23, 2015) (holding that conduct "simply cannot be said to have the natural consequence of harassment, oppression, or abuse and Plaintiff has failed to show such consequences."); *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1218-19 (M.D. Fla. 2009) (Plaintiff failed to state a claim under §1692d where he alleged that debt collector stated "you're lying," argued with him, and hung up the phone on consumer); *see also Unterreiner v. Stoneleigh Recovery Assocs.*, 2010 U.S. Dist. LEXIS 60786, *2-3 (N.D. Ill. June 17, 2010) (Section 1692d claim dismissed where collector "screamed" at plaintiff, told her that she owed "all kinds of money," and asked: "how could you go and max out a card like that?").

Plaintiff Charisma Jones has alleged that she received a letter from W&L; and she does not allege anything other than it is Exhibit 2. Common sense dictates that the mere sending of this kind of correspondence, which is statutorily required given her own prior demand, is not conduct "the natural consequence of which is to harass, oppress, or abuse," and Plaintiff's claim under § 1692d must be dismissed.

## CONCLUSION

15 U.S.C. § 1692c(a)(1) does not apply to the facts of this case. A party cannot unilaterally declare her own home to be an inconvenient place with which to communicate with her—something especially true when the communication is a response to a dispute notice. That is a situation in which 15 U.S.C. § 1692g(b) textually requires a "mailing."[7] And W&L did just that. Moreover, the facts here are objectively *not* a violation of 15 U.S.C. § 1692d, and the Plaintiff has not pleaded facts remotely approaching what would be required to meet that statute. Thus, the Amended Complaint should be dismissed.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA #22281
**NORMAN WOHLGEMUTH, LLP**
401 S. Boston Ave., Suite 3200
Tulsa OK 74103
Telephone: (918) 583-7571
Facsimile: (918) 584-7846
Email: RRay@NWLawOK.com

**ATTORNEYS FOR DEFENDANT,
WORKS & LENTZ, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jeffrey A. Wilson, Esq.

/s/ Ryan A. Ray
**Ryan A. Ray**

---

[7] Moreover, it was sent to the address listed on Ms. Jones's dispute letter, which is entirely consistent with 15 U.S.C. § 1692g(b). *May v. NCEP, LLC*, No. 4:13CV1583 CDP, 2014 U.S. Dist. LEXIS 67514, at *10 (E.D. Mo. May 16, 2014) (finding that the debt collector complied with § 1692g(b) by merely sending a communication to the plaintiff's "last known address").